[Crim. No. 1440. In Bank.—November 4, 1908.]

## THE PEOPLE, Respondent, v. WILLIAM WHALEN, Appellant.

CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—CASHING OF CHECK.—In a prosecution for obtaining money under false pretenses, the fact that the money was obtained by the defendant is sufficiently shown to sustain a conviction by evidence that the prosecuting witness gave a check therefor to the defendant, and further uncontradicted evidence indicating that such check had been cashed in the usual course of business.

ID.—FULLY DEVELOPED MINES—INSTRUCTIONS.—In such a prosecution, where the false representations consisted in the statement that certain mines, in which the prosecuting witness was induced to invest, were "fully developed," it is not erroneous for the court to instruct the jury that, under the circumstances of the case, "a fully developed mine is a deposit of metals or minerals whose underground works or developments are of such an extent and nature as to permit of the extraction of the metals and minerals therein contained with profit without further waste work."

ID.—INSTRUCTIONS NEED NOT BE REPEATED.—The refusal to give a requested instruction is not error, if the proposition covered thereby is included in other instructions given by the court.

ID.—WITNESS PRESENT AT TIME OF REPRESENTATION—BELIEF IN STATEMENTS.—In such a case, where a witness testified that she was present at the time the alleged false representations were made to the prosecuting witness, and at that time had herself paid a certain sum of money for stock in the mines, questions asked her on cross-examination by the defendant to ascertain whether or not she herself believed the representations, are immaterial and properly excluded.

ID.—EVIDENCE OF SIMILAR REPRESENTATIONS—INTENT.—Evidence that the defendant, prior to the transaction in question, had made substantially the same representations to other persons in an endeavor to sell to them stock in the company owning the mines, is admissible to show that the representations were not inadvertent, but were deliberately made, with knowledge of the facts, and with intent to deceive.

ID.—ASSAYER'S CERTIFICATES—EVIDENCE.—Certificates of an assayer, the correctness of which are not shown, are inadmissible in evidence to establish the value of the ore from the mines, and the same is so of the testimony of the proprietor of an assaying establishment as to assays there made, which were not made by him or under his supervision, and not under such circumstances that he had any personal knowledge whether they were correct or not.

APPEAL from a judgment of the Superior Court of Sac-
ramento County, from an order denying a new trial, and from
an order denying a motion in arrest of judgment. E. C. Hart,
Judge.

The facts are stated in the opinion of the court.

Henry C. Ross, and S. R. Hart, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Dep-
uty Attorney-General, for Respondent.

SHAW, J.—The defendant was tried and convicted upon
a charge of having by false pretenses obtained the sum of one
thousand dollars of lawful money from one Urilda M. Martin.

It is claimed that there was no proof that any money was
actually obtained by the defendant. It appeared from the
testimony of Mrs. Martin, the prosecuting witness, that she
and her sister, Mrs. Francis H. Martin, were induced to buy
of the defendant 100 shares of stock in the United States Min-
ing & Smelting Company, the sister taking 20 shares of stock
at the price of two hundred dollars, and the prosecuting wit-
ness 80 shares at the price of one thousand dollars, and that
the prosecuting witness gave him a check on a bank in New
York for twelve hundred dollars, in payment for the 100
shares, two hundred dollars of the amount being loaned by her
to her sister for that purpose. It may be conceded that if
nothing more had been shown than the giving of the check, it
would not prove the charge of having obtained money, but
we think the jury were fairly justified in concluding from
the entire evidence that the check thus given was cashed by
the defendant and the money obtained thereon. The two sis-
ters both testified upon the trial, and both expressly stated,
that they paid him twelve hundred dollars in money, and that
they had "invested" in the stock. The prosecuting witness
said: "Up to January, 1906, I fully believed these mines to
be worth every dollar I had put into them." The check was
given on May 3, 1905. The defendant remained in Sacra-
mento, where this transaction occurred, for several weeks
thereafter, and, while there, hired men to go with him to the
mines, which were in the state of Nevada, and for more than

six months thereafter he was in charge of the affairs of the mining company, either at the mines or in Sacramento. During this time the two sisters resided in Sacramento and were associating with other stockholders in the company to whom the defendant had sold other stock. There was nothing disclosed by the evidence to indicate that the defendant experienced any difficulty or delay in obtaining payment of the check. The facts concerning the payment of the money were all elicited upon the examination in chief of the two witnesses. There was no cross-examination on that subject, nor any attempt, at any stage of the case, to show that the check had not been paid in the usual course of business. Under the circumstances the jury were justified in construing the testimony of the prosecuting witness and her sister to mean that the money called for by the check had actually been paid.

It is claimed that the following instruction by the court was erroneous:—

"A fully developed mine is a deposit of metals or minerals whose underground works or developments are of such an extent and nature as to permit of the extraction of the metals and minerals therein contained with profit without further waste work."

The claim is that the question whether or not the mines were fully developed is a question of fact to be decided by the jury, and also that, if it is a question of law, the instruction was erroneous in stating that it was necessary, in order for a mine to be fully developed, that it be susceptible of being worked with profit. We think the question as to what in general would constitute a fully developed mine was one upon which the court might well instruct the jury, and that, if the instruction was not otherwise objectionable, it is not so because of its being an instruction upon a question of fact. Upon the other proposition, it may be conceded that if the instruction is taken alone, without reference to the facts of the case or the crime involved, and as an abstract proposition, it would be erroneous. A mine composed of ore containing so little precious metal that it would not pay for the mere crushing of the rock after it was taken out, might nevertheless be fully developed in the sense that the ore, such as it was, would be sufficiently exposed and ready for extraction to permit active operations in the regular course of mining to begin, and in such condition it

might be said to be fully developed, and yet, owing to the barrenness of the ore, it would be impossible to work it with profit.

But an instruction may be incorrect as an abstract or general proposition and yet not erroneous or injurious when considered in connection with the particular case and the facts to which it relates. The statement that the mines were fully developed was made, as is alleged, to induce the prosecuting witness to buy stock of the company to which the mines belonged, and it is in this connection that the meaning of the expression must be considered. Such a statement, made for such a purpose and in connection with such a proposition, would imply that the ores of the mines referred to were of such value that profitable mining operations could be immediately begun therein without further preparatory work. The instruction, therefore, merely expresses in language what the representation, in connection with the circumstances under which it is alleged to have been made, necessarily implied. The jury was fully instructed to the effect that it must appear that the money was obtained by means of the representation or representations charged in the information. The charge was that the representations were made to induce the prosecuting witness to buy stock in the corporation owning the mines and pay the sum of a thousand dollars therefor and that, relying thereon, the prosecuting witness did buy the stock and pay the money. Taken in connection with the transaction in which the representation was made, the instruction properly defines the meaning of the term "fully developed mine" according to the meaning it must have been intended to have when it was made to the prosecuting witness, and in connection with the other instructions was a correct exposition of the law.

It is claimed that the court erred in refusing certain instructions asked by the defendant. We have examined the instructions given, and we think that in each case where a proper instruction was refused, the proposition covered thereby was included in other instructions given by the court. In such case there could be no error in the refusal complained of.

Mrs. Francis H. Martin, a sister of the prosecuting witness, was present at the time the alleged false misrepresentations were made to the prosecuting witness. In giving her testimony she was allowed to state that she herself had paid two hundred

dollars for the stock. This it was necessary for her to do for the reason that the check given by the prosecuting witness included two hundred dollars in payment of the stock bought by Mrs. Francis H. Martin, and in order to give an intelligent narrative of what occurred at that time it was necessary for her to state her own purchase. Counsel for defendant appear to have conceived the idea that this put in issue the question whether or not Mrs. Francis H. Martin had been deceived and defrauded by the false representations of the defendant. He sought in his cross-examination to ascertain whether or not she herself believed the representations and also to elicit other facts immaterial except upon the theory that the defendant was on trial for obtaining money from the witness Mrs. Francis H. Martin. These questions were all immaterial to the case on trial and were properly excluded by the court.

Evidence was given upon the trial that the defendant, prior to the transaction in controversy, had made substantially the same representations to other persons in an endeavor to sell to them stock in the same company. It was proper for the court to admit evidence of this character to show that the representations were not inadvertent, but were deliberately made, with knowledge of the facts, and with intent to deceive. "Evidence of similar offenses involving the making of other false representations, is admissible against the prisoner to show that he is aware of the falsity of the statements made by him in the present case, and that, knowing them to be false, he made them with the intent to deceive." (*State* v. *Briggs,* 74 Kan. 382, [86 Pac. 447]. See, also, *people* v. *Gray,* 66 Cal. 275, [5 Pac. 240]; *People* v. *Neyce,* 86 Cal. 393, [24 Pac. 1091]; *People* v. *McGlade,* 139 Cal. 70, [72 Pac. 600]; 7 Ency. of Evidence, 627; 12 Cyc. 408, 411; 1 Wigmore on Evidence, sec. 320.)

In defense it was shown by a witness named Hassett that, after the commission of the crime charged, he had taken ore from these mines, had given it to the assayer to be assayed and had received from the assayer certain certificates stating the result, a copy of which he gave to the defendant. The assayer was not produced and no evidence of the correctness of the certificates was furnished. For the purpose of proving the value of the ore, the certificates were offered in evidence on this testimony, and were rejected. This ruling was correct.

The certificates were not of an official character, but were mere private statements, and in legal contemplation were of no higher value than any other hearsay testimony. The same considerations apply to the refusal of the court to allow the witness Thomas Price to testify to the assays afterwards made in his assaying establishment, but not made by him or under his supervision and not under such circumstances that he had any personal knowledge whether they were correct or not.

There was no misconduct on the part of the prosecuting attorney in his argument to the jury. His method of arraying the facts in the case, as he claimed them to be, and facts which he claimed to be matter of common knowledge, could not have misled the jury as to the evidence and did not transcend the limits of fair argument.

Numerous other objections to rulings made by the court are contained in the brief of counsel and but slightly argued. They all related to trivial matters not worthy of further comment. In general, the rulings were correct, and, where technically erroneous, they were of trifling importance or related to matters immaterial to the case and which could not have been prejudicial to the rights of the defendant.

The judgment of conviction and the orders denying motion for new trial and the motion in arrest of judgment are affirmed.

Henshaw, J., Angellotti, J., and Sloss, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing.