[Crim. No. 327.  Second Appellate District.—March 12, 1915.]

## THE PEOPLE, Respondent, v. LEON CORY and JOHN F. FORD, Appellants.

CRIMINAL LAW—CONSPIRACY TO DEFRAUD—PLEADING—SUFFICIENCY OF INFORMATION.—An information charging the crime of conspiracy as defined in section 182 of the Penal Code, which alleges, in substance, that the defendants "unlawfully and corruptly conspired together and agreed to cheat and defraud" the complainant by falsely representing to her that in a distribution of lots for advertising purposes she had drawn a lot which was level, tillable, and free from rock and that they would convey the same to her upon payment of a small sum of money to cover costs for deed and abstract, and that each of the representations as alleged was false and untrue to the knowledge of the defendants at the time they were made, states facts sufficient to constitute a public offense.

ID.—CONSTRUCTION OF SECTION 182 PENAL CODE.—Under section 182 of the Penal Code, the crime of conspiracy is made to consist, among other things, of the conspiring together by two or more persons to commit any crime, or to cheat and defraud any person of any property by any means which are in themselves criminal, or to obtain money or property by false pretenses.

ID.—EVIDENCE—PROOF OF ONE MATERIAL MATTER SUFFICIENT.—In such a case the prosecution is not required to prove all of the false pretenses alleged; proof of any one of the material matters charged, other essential facts being established, will support a conviction.

ID.—DECLARATION OF CO-CONSPIRATOR — ADMISSIBILITY OF AGAINST OTHER.—The statement of a co-conspirator made outside of the presence of his confederate is admissible against the latter after proof has been made of the conspiracy. This proof may be made by a showing of circumstances only, and where there is some evidence pointing in that direction of a substantial nature, it is not for the appellate court to question the sufficiency thereof.

ID.—EVIDENCE—ADMISSIBILITY OF SIMILAR TRANSACTION.—It is competent in such a case to allow proof of similar transactions had by the defendants and their agents with persons other than the complainant.

ID.—INSTRUCTIONS—SUFFICIENCY OF.—The instructions as given by the court must be construed in their entirety and it is held in this case when so construed they present a fair statement of the law of the case.

ID.—PLEADING—POSSESSION OF MONEY BY COMPLAINANT.—In such a case it was not essential to the statement of a good charge to aver in the information that the complainant was actually possessed of the

money out of which he might be defrauded; it was only necessary to charge the crime of conspiracy, together with the description of some overt act done in pursuance thereof, not that the crime agreed upon was actually accomplished.

ID.—CONSPIRACY—PUNISHMENT.—The crime of conspiracy is a misdemeanor punishable by a fine not exceeding one thousand dollars, or imprisonment in the county jail not exceeding one year, or both.

ID.—HIGH GRADE MISDEMEANORS—JURISDICTION OF SUPERIOR COURT.— The constitution of the state provides that the superior court shall have jurisdiction of all cases of misdemeanor not otherwise provided for, and under this provision it has been held that the legislature may repose exclusive jurisdiction in the police courts of all classes of misdemeanors committed within municipal boundaries.

ID.—COMPLETION OF CRIME—OVERT ACT—CHARTERS OF LOS ANGELES AND PASADENA—JURISDICTION.—The crime of conspiracy is not complete by the concerted minds being arrived at with the unlawful object in view, but there must be an overt act; and where the conspiracy charged originated in the city of Los Angeles, in which the police court is given by statute exclusive jurisdiction of misdemeanors, but the overt acts were consummated in the city of Pasadena, by whose charter the police court is given only the jurisdiction of the justice's court, which does not include "high grade misdemeanors," the superior court has jurisdiction of the charge on information or indictment.

ID.—POLICE COURTS—VALIDITY AND APPLICATION OF STATE LAW CREATING.—The state law creating police courts in municipalities is valid, except where the cities have exercised their right under section 8½ of article XI of the state constitution to provide in their charters for the creation and organization of such courts. Where this had been done, the state law ceases to apply.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

E. B. Coil, for Appellants.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy Attorney-General, and George Beebe, Deputy Attorney-General, for Respondent.

JAMES, J.—Decision was heretofore made herein affirming the judgment, and order denying a motion for a new trial, both of which had been appealed from. Thereafter a

rehearing was granted. After argument upon the rehearing and consideration of the various matters urged at that argument, the court is satisfied to re-adopt the opinion heretofore rendered herein as to its main text, with the addition of some further discussion as to certain of the points urged by appellants as grounds for their claim for a reversal. The opinion referred to is as follows:

"Appeal from a judgment of imprisonment and order denying a motion for a new trial.

"Defendants were charged by an information of the district attorney with the crime of conspiracy as defined in section 182 of the Penal Code. By that section the crime of conspiracy is made to consist of the conspiring together by two or more persons: '1. To commit any crime; . . . 4. To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses.' The foregoing quotations are of the parts of the section noted which are material to the charge as laid in the information. The allegations contained in the information are quite lengthy and, in brief, set out that the defendants with two other persons conspired and agreed to cheat and defraud one Gladys I. Stewart out of money and property by means of trick, artifice and device and false and fraudulent representations and pretenses; that said persons agreed together that one of their number, not either of the defendants, should represent to the complainant that Cory and Ford and a corporation called the Mutual Benefit & Loan Society were about to distribute certain parcels of land near Elsinore, in the county of Riverside, for advertising purposes, by chance; that the defendants should further represent that the complainant had been selected as a person to receive one of the lots, and that in consideration of the payment to them of $12.50 they would deliver a free and clear title to the lot; and that it was further to be represented that the land was located within one-half mile from Elisnore Cemetery, and within one and one-half miles from Elsinore Lake and within three miles from the town of Elsinore, and that the lot was a sightly lot on level land in a desirable location, well adapted and suitable for building and residence purposes, and located in a tract no part of which was hilly and all of which was level and was tillable

26 Cal. App.—47

and arable land, free from rock, and was valuable; that the representations set forth were made to complainant. An allegation followed that each of the representations as alleged were false and untrue to the knowledge of the defendants at the time they were made. The evidence introduced on behalf of the people shows that the complainant, who was a resident of Pasadena, received a call from a certain woman at her house; that this woman told her that the society mentioned was distributing lots for advertising purposes, and delivered to her a coupon which she told her would cost her nothing. A few days later a man made his appearance at complainant's house and informed her that she had been fortunate in the drawing and was entitled to a lot in the Elsinore subdivision, which he said she might obtain by paying $12.50, which he represented to be the cost of preparing a deed and furnishing an abstract of title. This man made statements as to the alleged level character of the land and complainant paid him the money and later received a deed and abstract. Upon some investigation being made she learned that the land was not desirable, nor as represented, and immediately called at the office of the defendants Cory and Ford and demanded the return of her money. She first met Ford and he refused to return the money and insisted that the land was good land and level. When complainant first entered the office both Ford and Cory were present together, but Cory withdrew and the first statements were made by Ford in response to her demand, without the presence of Cory. Soon, however, Cory entered the room and appeared to be very angry at the accusations made, and he then insisted and represented that the land was level and was of good character and favorably located. It was claimed on the part of the defendants that a portion of the money paid by complainant was for the purpose of supporting an application made by her to become a member of the loan society, but the testimony of the complainant was that she made no such application to become such member and had no notice of any such contention until she received through the mails, after she had paid the money demanded, a notice that some part of it had been applied on account of her pending application to become a member of defendants' corporation. All of the evidence, direct and by circumstance, tended to show a fraudulent

scheme entered into and carried out by the defendants and their agents with the design to secure money unlawfully.

"Appellants contend that the information did not state sufficient facts to constitute a public offense. It is argued that 'there was no attempt to charge or prove that a conspiracy existed to defraud the complaining witness by any means which were in themselves criminal.' It must be said, we think, that the information did contain allegations of pretenses which were actionable and which, if they resulted in the accomplishment of the designs of the persons making them, would have made the perpetrators subject to prosecution for having fraudulently obtained the property of another, as that crime is described in section 532 of the Penal Code. Excluding from consideration many of the alleged false pretenses, the representations that the lot was level and was tillable and free from rock, were sufficient upon which to found an action where such representations were deceitfully made. These statements were as to matters of fact of which the complainant had no knowledge, and were not mere expressions of opinion as to which persons might differ. That the false representations were alleged to have been made with fraudulent intent appears when all of the charging clauses of the information are read together. It is first alleged that the defendants 'unlawfully and corruptly conspired together and agreed to cheat and defraud' the complainant; it is further alleged that the representations made were false to the knowledge of the defendants, and that they were made pursuant to the agreement of conspiracy. The intent to defraud thus appears to be plainly charged.

"The prosecution was not required to prove all of the false pretenses alleged. Proof of any one of the material matters charged, other essential facts being established, would support a conviction. (*People* v. *Smith*, 3 Cal. App. 62, [84 Pac. 449]; *People* v. *Ward*, 5 Cal. App. 37, [89 Pac. 874]; *People* v. *Moxley*, 17 Cal. App. 466, [120 Pac. 43]; *People* v. *Meadows*, 22 Cal. App. 313, [134 Pac. 337].)

"The evidence introduced by the people showed that the business concern of which defendants were the active managers and operators was engaged in the fraudulent enterprise. The methods adopted to induce credulous persons to pay money in the belief that they were securing valuable lots by merely paying the cost of title certificates and deeds, were of a dis-

honest character throughout. Nor did either of the appellants disclaim responsibility for the misleading statements made by their agents as to the character of the land. There was testimony showing, as has been before referred to, that both affirmed that the land was level and of good character. The evidence showed that these statements were false and that a lot of the size and description which it was proposed to transfer to complainant would have been practically worthless; its value would be a matter of cents and not dollars. The claim that the court committed prejudicial error in allowing proof of statements of one of the appellants made outside of the presence of his alleged co-conspirator is not sustained by the facts. The statement of a co-conspirator made outside of the presence of his confederate is always admissible after proof has been made of the existence of the conspiracy. This proof may be by a showing of circumstances only, and where there is some evidence pointing in that direction of a substantial nature, it is not for this court to question the sufficiency thereof. As was said in *People* v. *Donnolly,* 143 Cal. 398, [77 Pac. 177]: 'The ultimate fact here, of course, was the conspiracy on the part of the defendant with the other parties named in the commission of the crime, but it is not necessary in order to establish that fact to prove that the parties met and actually agreed to jointly undertake such criminal action. From the secrecy with which unlawful undertakings are adopted it would be generally impossible to make such proof by direct testimony. Evidence is indirect as well as direct—consisting of inferences and presumptions—and it is code law that upon the trial of a case evidence may be given of any facts from which the facts in issue are presumed or are logically inferable; and the jury, by the exercise of their judgment or reason, warranted by a consideration of the usual propensities or passions of men, may make such deductions or draw such inferences from the facts proven as will establish the ultimate fact or facts in issue. . . . From all the facts and circumstances disclosed in this case on the trial of the defendant, it cannot be said that there was not evidence from which the jury could draw the inference or find the ultimate fact of a conspiracy on the part of the defendant.' In the same decision it is pointed out that the order in which the testimony is introduced at a trial where conspiracy is charged is im-

material and subject to reasonable regulation by the trial
judge. If it be admitted in order to give point to that objec-
tion, that the object of the alleged conspiracy had been fully
accomplished before the making of the incriminating state-
ments by appellants and that for such reason the admission
of one could not be received in evidence against the other,
it may be answered that, even though the objection is well
founded, it abundantly appears by an examination of the
entire evidence that any error committed in the regard men-
tioned has not in this case resulted in a miscarriage of justice.
(Const. art. VI, sec. 4½.)

"It was competent to allow proof of similar transactions
had by appellants and their agents with persons other than
the complainant. (*People* v. *Whalen,* 154 Cal. 472, [98 Pac.
194].)

"The instructions as given by the court must be considered
in their entirety, and when so considered they seem to pre-
sent a very fair statement of the law applicable to the case.
In portions thereof the jury was distinctly advised that the
allegations of the information must be proved before a con-
viction could result, and other portions of the instructions
which might seem to advise that evidence to justify a convic-
tion could be gathered from proof of facts not included within
the charge, do not bear that interpretation when carefully
analyzed.''

To the foregoing opinion a further discussion of proposi-
tions especially argued on the rehearing may be added:

We do not believe it was essential to the statement of a
good charge to aver in the information that the complainant
was actually possessed of the money out of which she might
be defrauded. Counsel is correct in his statement that the
information did not charge that the complainant actually
parted with property, although the proof showed that she
did. It was only necessary to charge the agreement of con-
spiracy, together with a description of some overt act done
in pursuance thereof—not that the crime agreed upon was
actually accomplished. It has been stated in the foregoing
that we view the evidence as being entirely sufficient to sus-
tain the charge contained in the indictment. That the evi-
dence was circumstantial in part is not to say that it was
insufficient; for the proof of a conspiracy, which is usually
hatched under cover and out of the view of others than those

directly concerned, is perhaps most frequently made by evidence of a chain of circumstances only. (*People* v. *Stokes*, 5 Cal. App. 209, [89 Pac. 997].)

The question as to the jurisdiction of the superior court over the offense is made the subject of much earnest argument on the part of appellants.

The crime of conspiracy is a misdemeanor punishable by a fine not exceeding one thousand dollars, or imprisonment in the county jail not exceeding one year, or by both. (Pen. Code, sec. 182.) It is urged that the superior court was without jurisdiction to try the offense if committed within the corporate limits of the city of Los Angeles, because the crime belonged to a class called "high-grade misdemeanors" of which the police court of the city of Los Angeles is given exclusive jurisdiction. The constitution of the state provides that the superior court shall have jurisdiction of all cases of misdemeanor not otherwise provided for. (Art. VI, sec. 5.) Under this provision it has been held that the legislature may repose exclusive jurisdiction in police courts, of all classes of misdemeanors committed within the municipal boundaries. (*Green* v. *Superior Court*, 78 Cal. 556, [21 Pac. 307, 541]; *Ex parte Westenberg*, 167 Cal. 309, [139 Pac. 674].) By act of the legislature of 1901 (Stats. 1901, p. 95) the police court of the city of Los Angeles was given exclusive jurisdiction of all misdemeanors punishable by fine or imprisonment. The same provision was continued in the succeeding act, approved June 6, 1913. (Stats. 1913, p. 469.) So that if it may be said, under the circumstances of this case, that the conspiracy was fully accomplished within the boundaries of the city of Los Angeles, the contention of appellants must be sustained. Section 184 of the Penal Code provides that no agreement, except to commit a felony upon the person of another, or to commit arson, or burglary, amounts to a conspiracy, unless some act, beside such agreement, be done to effect the object thereof, by one or more of the parties to the agreement. The unlawful act here attempted, that of defrauding the complainant of money, does not fall within either of the exceptions; therefore the crime was not complete upon the concert of minds being arrived at with the unlawful object in view. There was required an overt act, which act was consummated when the false representations were made to the complainant at the city of Pasa-

dena. The crime, therefore, was made complete only when the overt act was accomplished. But, says counsel for appellants, the police court of the city of Pasadena then had exclusive jurisdiction of the offense. However, this is not true. The city of Pasadena is governed under a freeholder's charter which was approved by the legislature in the year 1901. (Stats. 1901, p. 922.) By this charter a police court is established within the city and the jurisdiction thereof is defined in the same terms as are used to describe the jurisdiction of justices' courts created by general laws; in other words, jurisdiction is not given to such courts to try cases termed "high grade" misdemeanors. It has been held that the state law creating police courts in municipalities is valid, except where the cities have exercised their right under section 8½ of article XI of the state constitution, to provide in their charters for the creation and organization of such courts. Where this has been done, then the state law ceases to apply. (*Fleming* v. *Hance*, 153 Cal. 162, [94 Pac. 620].) Therefore, it follows that the crime of conspiracy committed within the limits of the city of Pasadena would properly be prosecuted by information in the superior court after preliminary examination, or by indictment by the grand jury, as was done in this case. To the point just discussed may be quoted the following observation found in 5 Ruling Case Law, page 1076: "A prosecution may be brought against conspirators in the county where the alleged combination or agreement was entered into. On the other hand, if an overt act in pursuance of the conspiracy is committed in a jurisdiction other than that where the combination was made, the conspirators may be prosecuted in the place where the overt act was committed. The law considers that wherever the conspirators act there they continue their agreement, and this agreement is continued as to all whenever any one of them does an act in furtherance of the conspiracy," (citing cases).

For the reasons given, the judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1915.