[Crim. No. 1611.  Second Appellate District, Division One.—June 2, 1928.]

THE PEOPLE, Respondent, v. HATTIE V. LARSON, Appellant.

E. R. Simon for Appellant.

U. S. Webb, Attorney-General and John L. Flynn, Deputy Attorney-General, for Respondent.

HAHN, J., *pro tem.*—The defendant was charged by an indictment filed by the grand jury of Los Angeles County; in one count with the crime of grand larceny, specifying the theft of $35,000; in count 2 with the crime of obtaining property under false pretenses, relating to the conveyance of real property of the alleged value of $100,000; in count 3 with the crime of embezzlement; and, in count 4, with the crime of grand larceny. Counts 3 and 4 relate to the sum of $3,100 belonging to the complaining witness, which was on deposit in the Western Savings Bank of Long Beach.

The jury returned a verdict of not guilty as to counts 2 and 4, and guilty as to counts 1 and 3. The court granted defendant's motion for a new trial as to count 1, but denied her motion for a new trial as to count 3. From the judgment and order denying a new trial as to count 3 charging embezzlement this appeal is prosecuted.

The four grounds urged by appellant for a reversal of the judgment are stated as follows: 1. The court erred in denying defendant's motion to elect; 2. The court erred in refusing to give an instruction advising the jury to acquit the defendant under count 3 of the indictment as requested by defendant; 3. The testimony is insufficient to sustain the verdict of the jury; 4. The court erred in denying defendant's motion for a new trial.

The record fairly supports the following recital as constituting the circumstances and events bearing upon the charge now under review:

The complaining witness was a Swedish woman, eighty-seven years of age, afflicted with deafness and unable to either speak, write, understand, or read the English language. Estranged from her children, she lived alone in a frugal manner in her home on Pine Street in the city of Long Beach, which property, by reason of the business character of its location, had attained a value of about $100,000. She

also had on deposit in the Western Savings Bank of Long Beach in excess of $3,100.

Early in 1924 the complaining witness became involved in a lawsuit and requested of the defendant, who spoke and understood the Swedish as well as the English language, her advice and aid in securing the services of an attorney. Apparently the complaining witness was not very well acquainted with defendant, but had known her mother for some time. Shortly after her appeal to the defendant for this advice and aid, it appears that the defendant was given a general power of attorney by the complaining witness. In September of the same year the defendant secured from the old lady a deed of conveyance for her property on Pine Street. This deed contained a provision which obligated the defendant as grantee to support the grantor during her lifetime. Two months later the complaining witness executed a grant deed for the same property to the defendant, evidently for the purpose of removing the condition providing for support as contained in the first deed. In January, one month after the second deed was executed, the defendant mortgaged the property for $35,000, of which sum $10,000 was used to pay an encumbrance on the property, while the remaining $25,000 was retained by defendant. Within two or three months afterward $12,000 in addition was obtained by the defendant on this property by the execution of two trust deeds. During the latter part of 1925 the indebtedness on the property was refunded by the defendant with a new trust deed for the principal sum of $45,000. This last trust deed was, early in 1926, foreclosed, by reason of default in the payment of interest on the mortgage indebtedness, and also by reason of the fact that the taxes were allowed to become delinquent.

Between the 8th of August and September 20, 1924, defendant secured all of the money the complaining witness had on deposit in the Western Savings Bank, amounting to the sum of $3,138.40. This was obtained upon five checks, two for $1,000 each, two for $500 each and one for $138.40, being the balance of the account. Three of the checks were signed "Magdalena Nelson," one signed "Magdalena Nelson per H. V. L.," and one signed "Magdalena Nelson per Hattie V. Larson." All five checks were made payable to Hattie V. Larson and were indorsed by her and upon pres-

entation by defendant at the Western Savings Bank, all except the last one for $138.40 were paid by the bank with cashier's checks. These cashier's checks were in turn deposited by the defendant in her own personal account in another bank, which account the evidence shows was some months later closed out.

It clearly appears that in connection with the execution of the various documents affecting the Pine Street property, as also the execution of the old lady's will, the defendant was active in procuring the services of attorneys and of notaries. Her's was the directing mind in the drafting and execution of the various documents. While the testimony relating to the execution of the checks is rather meager, the inference might fairly be drawn that the defendant was equally as active in directing the drafting and signing of the checks which depleted the old lady's deposit in the Western Savings Bank.

The complaining witness' testimony, due to her deafness, her lack of knowledge of the English language, and other infirmities of old age, presents a more or less erratic and disconnected story of her relations with the defendant, and her knowledge and understanding of the various documents and events which affected her property. She testified that she had a recollection of signing one paper at home at the request of the defendant, but denied any recollection of having signed any deeds, and denied she signed any of the checks in question. She repeatedly insisted that she had no intention either to convey her Pine Street property to the defendant, or to give the defendant possession of all of her money on deposit in the Western Savings Bank. The only thing, according to her testimony, that she authorized the defendant to do affecting her money was to pay the taxes upon her Pine Street property and pay her attorneys for services rendered. She further testified that she did not know that the defendant had obtained title to her real estate on Pine Street, or had obtained possession of all of her money in the bank until some months after the deeds had been recorded and the checks cashed.

The evidence would readily support the conclusion that the complaining witness never received one dollar from the defendant for the deed of conveyance to her Pine Street property, or from the proceeds of the money secured by the

defendant from the loans placed on the property, or from the money on deposit in the Western Savings Bank.

There is in addition testimony of other witnesses as to statements made by the defendant at different times concerning the fact that she had obtained property and money from the complaining witness and what she had done with it, or intended to do with it. There is also testimony as to the defendant's demeanor and conduct when she was interrogated by those investigating the old lady's affairs. All of this testimony presented pertinent matters which might well have formed a basis from which the jury would have been justified in drawing inferences that served to corroborate the testimony of the complaining witness.

The first point urged by appellant arises from the court's denial of defendant's motion ''to require the prosecution to elect upon what particular transaction, in the embezzlement of which particular sum of money the prosecution will ask for a conviction under count 3 in the indictment.''

Count 3 charged the embezzlement of $3,100, which was in round numbers the total amount which the complaining witness had on deposit in the Western Savings Bank. This money was obtained at different times during a period of five weeks. It is appellant's theory that, if she was at all guilty of embezzlement by reason of the misuse of any of the money secured from the complaining witness' savings bank account, each time she obtained money on a check a separate offense of embezzlement was committed. Upon this theory appellant contends that she was entitled to have the district attorney select one of the checks as constituting the offense for which she was to answer, and that the court committed prejudicial error in refusing to grant her motion to require the district attorney to so elect.

In the case of *People* v. *Barnett*, 15 Cal. App. 89 [113 Pac. 879], cited by appellant in support of her contention, the defendant was charged by indictment with the offense of embezzling a long list of securities. It appeared from the indictment that these securities were misappropriated on different dates, covering a period of about two years. It was there held that the taking of each parcel of securities constituted a separate offense and that the district attorney should have elected one of the specified acts of misappropriation of securities upon which to base the charge.

This case is not in point for the reason that in the instant case the defendant is not charged with embezzling the checks, but with embezzling a sum of money which constituted the entire sum on deposit in the complaining witness' account. (*People* v. *Whalen,* 154 Cal. 472 [98 Pac. 194].) ▇ The act of embezzling the money was not completed until the checks were converted into cash, or so deposited and cleared as to enable the defendant to obtain the money in person or by check. (*People* v. *Whalen, supra; People* v. *Crane,* 34 Cal. App. 599 [168 Pac. 377].)

There is no evidence in the record to show at what particular time the money as represented by the checks was actually obtained by the defendant or when it was available for payment upon her check. It does appear, however, that the money on deposit in defendant's personal account in which the cashier's checks were deposited was all drawn out and the account closed.

Another factor important in determining when the act of embezzlement is completed is the intent of the person charged. It may well be in the instant case that the defendant did not intend to misappropriate these funds until she had obtained possession of the entire amount of the complaining witness' money on deposit. There is evidence that the defendant made investments after she had received and banked all of the checks, which, in addition to evidence of her admissions, would justify the inference that the misappropriation of the money was accomplished after she had acquired the entire bank deposit of the complaining witness. The question of intent was one for the jury to decide from all the facts and circumstances shown by the evidence.

In the case of *People* v. *Ledbetter,* 85 Cal. App. 514 [259 Pac. 982], defendant obtained an automobile from the complaining witness upon the promise that he would sell it for $1,050 and invest for her the proceeds. Instead he sold the car for $300 cash and a Ford coupe. Some time later he sold the Ford coupe for $350. He retained the money he received from the sale of both cars. The information charged him with embezzling $1,050. Upon appeal the several legal objections made to the variance between the information and the evidence were swept aside and the judgment of conviction affirmed.

But conceding for the sake of argument that the defendant was entitled to have the district attorney elect which one of the checks was to be relied upon as furnishing the foundation for the charge of embezzlement, we cannot see how the defendant was prejudiced by the court's ruling in refusing to grant her motion. It appears without contradiction that each of the checks was obtained by the defendant in apparently the same way; that each was presented to the Western Savings Bank by the defendant, and a cashier's check was delivered to the defendant payable to her for all but the last check. These cashier's checks were all in like manner deposited by the defendant in her own personal account. If, then, the evidence relating to one check was sufficient to justify the jury's verdict, the same would have been true of the evidence as to all of the four checks; the net result of charging the defendant with the embezzlement of $3,100 instead of the embezzlement of money obtained upon each separate check, is that she stands convicted of but one count of embezzlement, while under her theory, if guilty at all, she would be guilty of four offenses of embezzlement.

In urging her second point, that the evidence is insufficient to support the verdict, appellant asserts that there is no evidence to show that the checks were received by her upon any trust relation, and, further, that there is no testimony to show what was the purpose for which the checks were signed and delivered by Magdalena Nelson to the defendant. Section 508 of the Penal Code of California reads as follows: "Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

It will be noted that under this section of the code three requisites are essential to support the charge of embezzlement: First, that there existed between the complaining witness and the defendant the relation of clerk, agent, or servant; second, that while such relation existed there came into the possession of the defendant property belonging to the complaining witness; and, third, that while such property was in the possession or under the control of the de-

fendant, the defendant fraudulently appropriated it to her own use, or secreted it with a fraudulent intent to so appropriate it to her own use.

As to the first requisite, the evidence here clearly shows that during the period that the checks were issued, the defendant was acting as the agent and employee of Magdalena Nelson. The defendant had a general power of attorney from the complaining witness, and during a period of several months apparently was attending to her business affairs. It further appears that in the case of the five checks the signatures of Magdalena Nelson were written by the defendant herself.

As to the second, that the defendant came into the possession of all the money which the complaining witness had on deposit in the bank, is not disputed.

The only conflict in the evidence is as to the third element, namely, the fraudulent appropriation of the money by the defendant. It must be conceded that the testimony of Magdalena Nelson, the complaining witness, is conflicting and far from satisfactory. If the verdict was dependent alone upon the old lady's testimony, appellant's contention would have to be sustained. There is the complaining witness' testimony that she told the defendant to pay her taxes and her attorney's fees; also, that she had not authorized the defendant to use her funds for any other purpose. The inference may fairly be drawn from the old lady's testimony that she had no intention of giving the defendant any of this money. In addition, there is testimony of statements and admissions made by the defendant prior to her arrest that she had the money of the complaining witness and had invested the same in stocks and other securities. Without conflict it appears that when she obtained the checks in question the defendant immediately secured cashier's checks for the same and deposited these in her own personal account in another bank, and that subsequently this money was checked out by the defendant and her account closed.

Appellant cites the cases of *People* v. *Wyman*, 102 Cal. 552 [36 Pac. 932], *People* v. *Royce*, 106 Cal. 173 [37 Pac. 630, 39 Pac. 524] , and *People* v. *Page*, 116 Cal. 386 [48 Pac. 326], in support of her contention that the mere deposit of the funds in her personal account and withdraw-

ing them afterward is not sufficient to show a conversion of the funds. These cases, in our opinion, do not conflict in the views there expressed with the jury's verdict here. The fraudulent intent is always an important element in cases of this character, and it is for the jury to determine from all of the evidence whether or not the defendant acted with fraudulent intent in depositing the money of the complaining witness in her own personal bank account.

In the light of all the circumstances as shown by the evidence, we are of the opinion that there was sufficient evidence to justify the jury in concluding that the defendant was actuated by a fraudulent intent when she deposited the funds in her own account and afterward checked them out. (*Commonwealth* v. *Smith*, 129 Mass. 104; *People* v. *Schroeder*, 43 Cal. App. 623 [185 Pac. 507]; *People* v. *McLean*, 135 Cal. 306 [67 Pac. 770].)

As we find no reversible errors in the record, the judgment and order denying motion for a new trial are affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellant for a rehearing of this cause was denied by the district court of appeal on July 30, 1928.

All the Justices present concurred.