[Criminal No. 865.   Filed January 3, 1939.]

[85 Pac. (2d) 984.]

# LEE W. DRAKE, Appellant, v. STATE OF ARIZONA, Respondent.

Messrs. Windes & Clark and Mr. Raymond N. Campbell, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. Albert M. Garcia, Assistant Attorney General, for the State.

ROSS, C. J.—Lee W. Drake was convicted of embezzling $13.17, the property of the state, and he has appealed.

The charging part of the information reads as follows:

"The said Lee W. Drake on or about the 13th day of April, 1937, and before the filing of this information, at, and in the County of Yuma, State of Arizona, was then a public officer, to-wit; a duly appointed, qualified and acting agent of the State Tax Commission of Arizona, which said commission was duly created and then and there existing under and by virtue of the laws of the State of Arizona, among other things, for the purpose of collecting the privilege sales tax by and through its commissioners and agents, and then and there by virtue of his said appointment and his said office and trust as such agent as aforesaid of the State Tax Commission of Arizona, there came into the possession of the said Lee W. Drake and under his control from one Cirilo Salas for and as a privilege sales tax, $13.17, lawful money of the United States and the personal property and public funds of the State of Arizona, and while said money and personal

property was so in his possession and under his control by virtue of his said appointment and his said office and trust as such agent, as aforesaid, of said State Tax Commission of Arizona, he, the said Lee W. Drake, then and there, to-wit; on the said 13th day of April, 1937, at and in the said County of Yuma, State of Arizona, did wilfully, unlawfully, feloniously, and fraudulently, appropriate the said money and personal property to his own use, not in the due and lawful execution of his said trust as such agent, as aforesaid of the said State Tax Commission.''

The essential facts to a consideration of the points raised are as follows:

The Excise Revenue Act of 1935 (Chapter 77), which is generally known as the Privilege Sales Tax Law, imposes the duty of collecting the tax from taxpayer upon the State Tax Commission, and authorizes the commission to appoint agents (and other employees) to act for and under it in the performance of its duties in that respect (sec. 24, art. 2). Such agents may examine any books, papers, records, or other data bearing upon the correctness of any taxpayer's return or for the purpose of making a return where none has been made, as required by the act (sec. 25, art. 2). The commission appointed defendant one of its field agents with authority to collect and receipt for taxes and as such agent, on or about April 13, 1937, defendant waited upon Cirilo Salas, who had a small mercantile business in Yuma county. At the time Salas was in arrears for taxes for October, November and December, 1936, and January and February, 1937. The defendant examined Salas' books and invoices and such other data as were available, and made out, or assisted in the making of, two statements for the taxpayer Salas to sign and verify. One of such statements was for the period from October 1, 1936 to and including February 28, 1937, and showed that Salas owed the state in taxes $9.97 and penal-

ties thereon in the sum of $1.99. The other statement was for the month of March, 1937, and showed that Salas owed the state for that month taxes in the sum of $1.87, or all told that he owed the state $13.83. Both these statements were signed by Salas and verified before the defendant, who was authorized by the act to administer oaths (sec. 25). The defendant then informed Salas that he owed the state forty-odd dollars. Salas had only $27 in cash and this sum he gave to defendant. He thought the excess over $13.83 was a fine for delinquency. The defendant thereafter transmitted to the State Tax Commission the two statements above described and the sum of $13.83 to cover the taxes and penalties owed the state up to April 1, 1937, but did not account for the sum of $13.17, the balance of the $27.

Over the objection of defendant, the state was permitted to introduce evidence of other acts of a very similar nature committed by defendant in the same community and about the same time. It appears he would exhibit his official badge to a taxpayer, ask for his books and records, examine them and advise the taxpayer he was behind in his taxes. He would demand that the taxpayer give him a certain sum in cash and would not accept a check. Two such merchants who gave him money were Chinese and one a Mexican, who apparently were made to believe they would be closed out or fined. A Mr. Joe Ruby under some such apprehension gave him $50 cash, and a few days later $25 for a book to keep his accounts and instructions as to how to keep them.

██ Upon the facts as above set forth, the jury found defendant guilty. He contends, however, that such facts, if admitted to be true, fail to show that he is guilty of embezzlement. He argues that though it be conceded that he collected from Salas $27 when the latter owed the state only $13.83, and that he ap-

propriated the balance of $13.17 to his own use, it does not show him to be an embezzler under the statute defining embezzlement. Sections 4764 and 4765, Rev. Code 1928. These two sections are a condensation of sections 500–506, Penal Code of 1913, and for the purposes of this case may be treated as having the same meaning. We have heretofore held that the elements necessary to establish embezzlement are: (1) the trust relation between the owner of property and the person accused of embezzlement; (2) the accused must have obtained possession or control of the property by virtue of the trust relation; and (3) he must have breached his trust by the fraudulent appropriation of the property to a use or purpose, not in the due and lawful execution of his trust. *Hinds* v. *Territory*, 8 Ariz. 372, 76 Pac. 469. The relation out of which the crime grows is a fiduciary one. Any person standing in a confidential or trust relation to another and who by reason thereof comes into possession or control of the latter's property may embezzle it by fraudulently converting it to a use or purpose other than the one intended. Defendant does not refute or question these settled principles of the law but he says there is a failure of proof in that the evidence shows the $13.17 he is accused of embezzling never at any time became the property of the state or came into its control or possession.

■■ We have held that ownership as alleged in an embezzlement, indictment or information must be established by the evidence (*Kendall* v. *State*, 38 Ariz. 314, 299 Pac. 1029), so the point made is important. However, a qualified ownership is sufficient. *Sias* v. *Territory*, 11 Ariz. 175, 89 Pac. 539.

■ Section 21, article 2, of the Excise Revenue Act of 1935 provides that the tax may be paid to the commission by a bank draft, check, cashier's check, money order, or money. We take it that the payment

by Salas to the defendant was a payment to the commission. Sections 24 and 25, *supra,* provide that agents appointed by the commission shall serve under and act for the commission and have the same visitorial powers as the commission. Therefore, defendant in demanding, accepting and receipting for Salas' taxes was performing a duty enjoined on him by the Excise Revenue Act, and any excess over and above the amount actually owed by the taxpayer received by defendant should have been accounted for as provided in section 26, article 2, of the act. By the provisions of such section, the overpayment should have been applied to overdue taxes, if any, or credited to future taxes, or refunded to the taxpayer, in any of which events the state's qualified ownership would have been established. Actually the excess was not ascertained by the tax commission and carried in its records as the law provides, because it was not reported by defendant. The funds were, however, constructively in the state's possession.

He collected the excess tax under the claim and pretense that it was due and owing the state and we think he should be held in this proceeding estopped to deny the truth of such claim and representation, however false they may have been.

In *Yuma County* v. *Wisener,* 45 Ariz. 475, 482, 46 Pac. (2d) 115, 117, 99 A. L. R. 642, an action by the county against the clerk of the superior court to recover a sum of money which the clerk had collected as fees of his office, we said:

"There can be no question that if defendant by word or deed caused applicants for a marriage license to believe that in order to obtain such license the law required that the $2.50 in question be collected by him as clerk of the court, that he was securing such money under color of office, as the words are generally understood, and it is the usual rule that where a public officer obtains money under color of office, which he had

no legal right to collect, that he is not permitted in a suit to recover such sums, either from himself or his bondsmen, to contend that the state has no right to recover the money from him because it had not authorized him to collect it from the citizens whom he had deceived in regard to the law.   [Citing cases.]''

This was said in a civil action, but it seems that the same rule is applied by some of the courts to criminal procedure also.   It is said:

''Some courts have held that one who has received money or property under color of authority is guilty of embezzlement for converting it to his own use, although he acted without authority, or in excess of his authority, in receiving the property, such holding in most of the cases being based on the doctrine of estoppel.''   20 C. J. 424, sec. 13.

See, also, *Compton* v. *State,* 102 Ark. 213, 143 S. W. 897.   This is the rule in our sister state of California. In *People* v. *Gallagher,* 100 Cal. 466, 35 Pac. 80, it was said (p. 81):

''Bishop, in his work on Criminal Law, in commenting upon *Rex* v. *Snowley* [4 Car. & P. 390], uses the following language: 'That in reason, whenever a man claims to be a servant while getting into his possession, by force of this claim, the property to be embezzled, he should be held to be such on his trial for the embezzlement.   Why should not the rule of estoppel, known throughout the entire civil department of our jurisdiction, apply in the criminal?   If it is applied here, then it settles the question; for by it, when a man has received a thing from another under a claim of agency, he cannot turn around, and tell the principal, asking for the thing, ''Sir, I was not your agent in taking it, but a deceiver and a scoundrel.'' ' Bish. Crim. Law (3d Ed.), § 367.   In the seventh edition of the same work, like language, with some additions, is used, at section 364 of volume 2.   In *Ex parte Hedley,* 31 Cal. [108] 109,—a case involving the same question, and in many respects similar to the one at bar,—this court quoted with marked approval the foregoing ex-

tract from Bishop, and, in an opinion regarded as conclusive of the question here, held that if an agent obtains the money of his principal in the capacity of agent, but in a manner not authorized, and converts the same to his own use, with intent, etc., it is money received 'in the course of his employment' as agent.''

Just as soon as the defendant acquired possession of the excess of the taxes, such excess having been obtained under color of office became, so far as he is concerned, the property of the state; that is, the state under section 26, *supra*, became its legal custodian with the power to handle it as therein provided.

Defendant's counsel, while denying that defendant demanded or received from Salas more than $13.83, take the position that if he did in fact receive the sum of $27 and failed to account for the excess, he was either guilty of obtaining money under false pretenses or that his act constituted larceny. We would say that they are right, unless we apply the rule that he, having collected the excess under the color of his office as the money and property of the state, is now estopped from denying that it is not the state's. If he had done his duty and paid it over to the state, the state's ownership would have satisfied the law. At all events, as between the defendant and the state, his representations in obtaining the money preclude him from denying the state's title to the money in this proceeding.

■■ The ruling of the court admitting, over defendant's objection, evidence of similar transactions by defendant with four other taxpayers at and near the same time is most seriously criticized as erroneous. The general rule is that evidence of other crimes than the one charged should not be allowed (*Vigil* v. *State*, 33 Ariz. 51, 262 Pac. 14), but there are exceptions to this rule and we think the facts here make this such an exception. We have on several occasions held evi-

dence of other crimes than the one charged is admissible when it tends to establish a common scheme, plan or system. *Greve* v. *State*, 36 Ariz. 325, 285 Pac. 274; *Lewis* v. *State*, 32 Ariz. 182, 256 Pac. 1048; *Douglass* v. *State*, 44 Ariz. 84, 33 Pac. (2d) 985. In *Springer* v. *State*, 209 Ind. 322, 196 N. E. 97, 105, it is said:

"It is generally held by courts of last resort that in trials for embezzlement evidence of other acts of a similar character whether before or after the one charged is competent for the purpose of showing a guilty knowledge, and repel the inference of accident or mistake. *People* v. *Molineux*, 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193, page 264; *People* v. *Hatch*, 163 Cal. 368, 125 Pac. 907; *People* v. *Gray*, 66 Cal. 271, 5 Pac. 240."

In *People* v. *Heinrich*, 65 Cal. App. 510, 224 Pac. 466, 468, a false pretense case, it was said:

"Over the objection of defendant evidence was admitted to the effect that to other persons defendant had made representations similar in many respects to those made by defendant to Crandell. The rule in this state is well established that in analogous cases such evidence is admissible for the purpose of proving guilty knowledge, intent, and system. *People* v. *Whalen*, 154 Cal. [472] 476, 98 Pac. 194; *People* v. *Gray*, 66 Cal. [271] 275, 5 Pac. 240; *People* v. *Cory*, 26 Cal. App. 735, 148 Pac. 532; *People* v. *Eddards*, 25 Cal. App. 660, 145 Pac. 173."

In *People* v. *Shearer*, 83 Cal. App. 321, 256 Pac. 611, 616, also a false pretense case, it is said:

"In the course of the trial, evidence of three other similar transactions with other parties who had had dealings with Ellis was received to show a criminal system of operation; and the admission of such evidence is now specified as error. In our opinion, however, such evidence related to transactions sufficiently near in time and similar in character to be receivable within the rule discussed and applied in *People* v. *Gray*, 66 Cal. 271, 274, 275, 5 Pac. 240; *People* v. *Ruef*,

14 Cal. App. [576] 579, 604, 114 Pac. 48, 54; *People* v. *Arnold,* 17 Cal. App. 68, 74, 118 Pac. 729; and *People* v. *Cory,* 26 Cal. App. 735, 741, 148 Pac. 532.''

In *People* v. *Whalen,* 154 Cal. 472, 98 Pac. 194, 197, the reason for the rule is given as follows:

''Evidence was given upon the trial that the defendant, prior to the transaction in controversy, had made substantially the same representations to other persons in an endeavor to sell to them stock in the same company. It was proper for the court to admit evidence of this character to show that the representations were not inadvertent, but were deliberately made, with knowledge of the facts, and with intent to deceive. 'Evidence of similar offenses involving the making of other false representations is admissible against the prisoner to show that he is aware of the falsity of the statements made by him in the present case, and that knowing them to be false, he made them with the intent to deceive.' . . . ''

The victims in each of the cases were impressed by defendant with the idea that if he did not give defendant what he asked he would be penalized. He conveyed the idea to Salas he was fined; to another he would be closed out. He exacted cash for excesses from each and would not take checks. He made them all know he was an officer by first exhibiting his official badge furnished him by the tax commission. It appears to us he had adopted in each case the same general plan or system and that he was working it principally among the Mexican and Chinese merchants, or persons least likely to know and insist upon their rights or to complain of maltreatment. The evidence was properly admitted.

If we are correct in our reasoning thus far; that is, that the court committed no error in submitting the question of defendant's guilt or innocence to the jury upon the evidence, and that it was not error to let in evidence of similar acts of defendant, then the instruc-

tions given of which defendant complains were correct since they were based upon the assumption that the money involved belonged to the state, and that it came into the possession and control of defendant under the color of his office. Likewise, the instruction requested by defendant, to the effect that if defendant converted the funds and had the intention of converting them at the time of obtaining possession thereof he did not commit embezzlement, was properly refused. The defendant may not now be permitted to say, in order to escape the clutches of the law:

"I might have stolen the money or perhaps obtained it from Salas by false pretenses, but I did not embezzle it."

He is, as heretofore stated, estopped from denying the lawfulness of his act in demanding and collecting the excess tax from Salas.

However, defendant insists that he had no authority under the Sales Tax Law to collect taxes from taxpayers, or that if he did have authority to do so there was introduced no proper proof thereof. He does not question that he was appointed as a field agent of the commission or that he was acting as one at the time involved but he claims the court erred in permitting Mr. Frank E. Fraser, Director of the Sales Tax Division of the State Tax Commission, to state what his duties were. The objection to Fraser's testifying as to defendant's duties was that he was a subordinate and

"cannot define the duties of the field agents. The duties of the field agents are such as are prescribed in the sales tax law and such as he might be empowered to do by the State Tax Commission that is not in conflict with the state tax law. This subordinate cannot define the duties of the agents."

This witness testified that field agents were sent out to locate and see delinquent taxpayers and learn why

taxes were not paid when due; that they were instructed to audit such taxpayers' books and records and ascertain how much taxes were due the state and to collect such taxes and penalties and issue receipts therefor; that to that end such field agents were furnished blank forms of reports and receipts; that they were instructed to obtain from local banks cashier's checks and transmit taxes to the commission at once. These duties were purely ministerial and of a kind delegable to agents by the commission. Fraser was the man in charge of the division in which defendant was working and certainly knew as well as anyone what defendant had been instructed to do. We again refer to sections 24 and 25 of chapter 77 for authority in the tax commission to appoint agents and prescribe their duties. Section 1 of article 3 of said chapter also provides that the tax commission shall from time to time promulgate such rules and regulations, not inconsistent with the act, for making returns and for the ascertainment, assessment and collection of the taxes imposed, as it may deem necessary to enforce the same.

For the foregoing reasons, the judgment of conviction is affirmed.

LOCKWOOD and McALISTER, JJ., concur.