[Crim. No. 3074. Second Appellate District, Division One.—April 20, 1939.]

THE PEOPLE, Respondent, v. WILLIAM BUSICK et al., Appellants.

John C. Packard and James M. Carter for Appellants.

U. S. Webb, Attorney-General, and Paul D. McCormick, Deputy Attorney-General, for Respondent.

DORAN, J.—In an indictment returned by the grand jury of Los Angeles County on March 15, 1937, 358 defendants, including the 22 appellants herein, were charged with the offense of conspiracy to violate sections 418 and 594 of the Penal Code of the State of California. The defendants demurred, both general and special, and at the same time a motion was made to set aside the indictment. The demurrer was overruled and the motion denied. At the trial when the first witness was called and sworn, defendants objected to the introduction of any evidence, basing the objection substantially on the same grounds that were urged in connection with the demurrer and the motion to set aside, which objection was overruled. At the conclusion of the People's case defendants moved to quash the indictment upon all of the grounds previously stated in the demurrer and motion to set aside the indictment, which motion was also overruled. The defendants were adjudged guilty and motions in arrest of judgment and for a new trial were denied.

Defendants appeal from the judgment and from the order denying the motion for a new trial.

Inasmuch as one of appellants' principal contentions is based on the alleged insufficiency of the indictment, the charging part thereof is herewith set forth in full:

"The Grand Jury of the County of Los Angeles hereby accuses (then follow the names of the 358 defendants) of a felony, to wit, the crime of conspiracy to violate Section 418, Penal Code of California, and Section 594, Penal Code of California, in that, on or about the 1st day of November, 1936, and continuously thereafter, in the County of Los Angeles, State of California, the above named defendants did willfully, unlawfully and feloniously conspire, combine, confederate and agree together and with divers other persons, whose true names are to the Grand Jury unknown, to use and procure, and to procure, encourage and assist another to use force and violence in entering upon and detaining

the lands, buildings and other possessions of the Douglas Aircraft Company, a corporation, in a manner and case not authorized by law, which said lands, buildings and other possessions were then and there in the lawful, actual and peaceable possession of the said Douglas Aircraft Company, a corporation, and were located at number 3000 Ocean Park Boulevard, in the City of Santa Monica, in the County of Los Angeles; and also to maliciously injure and destroy real and personal property, not the property of the aforesaid defendants, but on the contrary the property of the said Douglas Aircraft Company, a corporation, which said property was located at number 3000 Ocean Park Boulevard, as aforesaid, by ways and means and in a manner otherwise than such as to constitute a violation of any other section of the Penal Code than the aforesaid section 594.

### "OVERT ACT NO. 1.

"That pursuant to said combination, confederation, agreement and conspiracy, and to carry out the objects and purposes of the same, the aforesaid defendants entered upon the premises located at number 3000 Ocean Park Boulevard, in the City of Santa Monica, County of Los Angeles.

### "OVERT ACT NO. 2.

"That pursuant to said combination, confederation, agreement and conspiracy, and to carry out the objects and purposes of the same, the aforesaid defendants did break a certain partition located between two rooms in a building situated at number 3000 Ocean Park Boulevard, in the City of Santa Monica, County of Los Angeles.

### "OVERT ACT NO. 3.

"That pursuant to said combination, confederation, agreement and conspiracy, and to carry out the objects and purposes of the same, the aforesaid defendants did lock, barricade and bar the doors of the buildings located at number 3000 Ocean Park Boulevard, in the City of Santa Monica, County of Los Angeles.

### "OVERT ACT NO. 4.

"That pursuant to said combination, confederation, agreement and conspiracy, and to carry out the objects and purposes of the same, the aforesaid defendants did make, manufacture and possess instruments and weapons of the kind commonly known as blackjacks, sling-shots and billies.

## "OVERT ACT NO. 5.

"That pursuant to said combination, confederation, agreement and conspiracy, and to carry out the objects and purposes of the same, the aforesaid defendants did remain in and about the premises located at number 3000 Ocean Park Boulevard, in the City of Santa Monica, County of Los Angeles, between the 22nd day of February, 1937, and the 26th day of February, 1937."

It is contended that "the indictment does not set forth the facts constituting the alleged crime with sufficient certainty to apprise the defendants of the charge but instead in generic language sets forth facts which might constitute many and various crimes . . . (and) in attempting to charge a conspiracy to violate section 418, Penal Code, alleges acts which may or may not constitute a crime"; also, that "Section 418 of the Penal Code is so indefinite and uncertain that it fails to define the crime denounced in plain and specific language and is therefore unconstitutional".

Sections 418 and 594 of the Penal Code are as follows:

"Sec. 418. *Forcible entry and detainer.* Every person using or procuring, encouraging or assisting another to use, any force or violence in entering upon or detaining any lands or other possessions of another, except in the cases and in the manner allowed by law, is guilty of a misdemeanor."

"Sec. 594. *Malicious mischief in general, defined.* Every person who maliciously injures or destroys any real or personal property not his own, in cases otherwise than such as are specified in this code, is guilty of a misdemeanor."

That an indictment, based upon a code provision of the character herein considered, is sufficient if it charges the offense in the language of the statute is too well settled to require citation of authority. The indictment sets forth that the defendants conspired to use force and violence in entering upon and detaining the lands and possessions of the Douglas Aircraft Company, which lands and buildings were then and there in the lawful and peaceable possession of said aircraft company, and that defendants conspired to use such force and violence in a manner and case not authorized by law. Although brief, the indictment clearly gives "the accused notice of the offense of which he is accused", which condition meets the requirement of section 952 of the Penal Code.

■ With regard to the argument by appellants, as above noted, that the indictment is faulty because, in effect, it is too general in scope and therefore could be understood to include the violation of many other provisions of the Penal Code and, also, that it sets forth acts which may or may not constitute a crime, it is not urged that any evidence was received at the trial which included proof of such other violations, nor is it pointed out in what manner appellants were in fact prejudiced by such alleged defects in the indictment. In that connection for the purpose of determining the question here considered it should be noted that from the standpoint of logic it is unnecessary to take into account what might have occurred, but only what in fact did occur. Possibilities almost without limit can be suggested to lend support to a specious argument, but logical reasoning will inevitably reveal the defect. The argument therefore that the acts alleged, in some instances may not constitute a crime, is beside the issue.

■ In support of appellants' contention that section 418 of the Penal Code is so indefinite and uncertain that it fails to define the crime denounced in plain and specific language and is therefore unconstitutional, it is argued that "such a broad prohibition includes within it many instances of innocent acts commonly done in everyday life" and that "an honest mistake in judgment might result in a criminal prosecution". Again appellants rely on possibilities that need not necessarily be taken into account. It is not contended that the acts of appellants fall within the above-mentioned category, and that by reason thereof they are the victims of an indefinite statute. Even assuming, but for the sake of argument only, that the statute is indefinite, nevertheless appellants appear to have suffered no prejudice thereby.

■ In support of the contention that section 418 of the Penal Code is unconstitutional, appellants cite only one case, namely, *United States* v. *Reese*, 92 U. S. 214 [23 L. Ed. 563]. The decision does not appear to be in point. It merely holds that the act therein considered was ineffective as the basis of a criminal prosecution because Congress had "not as yet provided by appropriate legislation for the punishment of the offense charged in the indictment". Section 418 of the Penal Code of California was adopted by the legislature in 1872. Although the right of appellants herein to chal-

lenge the constitutionality of the section is not questioned, nevertheless it is significant that the validity of the statute has not been disputed since its adoption. Under such circumstances courts proceed with added caution and will not disturb the validity of a statute in the absence of a showing infinitely stronger than appellants have presented.

For convenience, in giving consideration to appellants' further contention that certain facts and events operated to invalidate the indictment upon which the judgment was based, such facts and events are set forth in detail. The pertinent portion of appellants' brief, relative thereto, is as follows:

"On February 25, 1937, the grand jury of the County of Los Angeles returned an indictment against the defendants and appellants herein and others. The indictment so returned named sixty-eight defendants by name and three hundred and thirty-two fictitiously named defendants, two hundred of which were named John Doe 1 to 200, inclusive, and 132 were named Richard Roe 1 to Richard Roe 132.

"Thirteen of the defendants who are appellants herein were included by substantially their true names. The remaining appellants were purportedly filed against by said indictment under fictitious names.

"The indictment purported to charge that the defendants had committed the crime of conspiracy to violate Sections 418 and 594 of the Penal Code, charging specifically that:

" 'On or about the 22nd day of February, 1937, the said defendants did wilfully, unlawfully and feloniously conspire, combine and agree together that they would use and procure and encourage and assist another to use force and violence in entering upon and detaining lands and other possessions of the Douglas Aircraft Company——; and that they would maliciously injure and destroy real and personal property, not their own, and the property of said Douglas Aircraft Company, a corporation.'

"The indictment thereafter purported to allege certain overt acts. . . .

"Thereupon, the warrants issued on the indictments were handed to the sheriff of the County of Los Angeles. Sixty-eight of these warrants named particular persons. The balance named only John Does and Richard Roes. Instructions were given to the arresting officers, deputy sheriffs, to arrest those persons that they found inside the Douglas Plant, re-

gardless of whether they entered the plant before or after the indictment was returned. No description of the fictitious defendants was given to the arresting officers.

"Thereafter, some 350 persons were arrested by deputy sheriffs and lodged in the county jail.

"Thereafter, from time to time, various of the defendants who were named in the indictment but were not inside the Douglas Plant at the time of the arrest, appeared in court and voluntarily surrendered, including two of the appellants herein.

"Thereafter, on March 2, 1937, an amended indictment in the above entitled proceeding was filed with the Superior Court; by which said amended indictment, the various persons who had been arrested, pursuant to the John Doe indictment and warrants issued thereon, were named by their true names. Said amended indictment named 359 individuals and no fictitiously named defendants whatsoever.

"On March 9, 1937, the defendants who are appellants herein and various other codefendants filed a demurrer to the amended indictment; said demurrer was both general and special.

"On March 9, 1937, the demurrer was argued in Dept. 1 of the Superior Court before Hon. Emmet H. Wilson, Judge Presiding, and was ordered submitted by the court. · Decision on the demurrer and also the plea of each defendant was continued until March 16, 1937.

"On March 15, 1937, without any decision having been made upon the demurrer under submission, and without any order from the Superior Court or any judge thereof, the grand jury of the County of Los Angeles returned, in the above entitled proceeding, a second amended indictment and the same was filed with the clerk of the court. The bail and orders for release of defendants on their own recognizance theretofore made were ordered to remain in full force and effect.

"The second amended indictment named 358 defendants, including the 22 appellants herein and did not name any fictitious defendants."

Defendants pleaded not guilty on March 16, 1937, as revealed by the official clerk's transcript of the proceedings, as follows: "Each defendant present in Court is arraigned on the second amended indictment and regularly enters his plea of 'Not Guilty as charged in the second amended indict-

ment'." As heretofore noted in the first paragraph of the within opinion, a demurrer to said so-called second amended indictment had been theretofore overruled and a motion to set aside denied.

Appellants attack the validity of what is referred to as the "original indictment", and in particular contend that because of a failure to comply with the statutory requirements with regard to the use of fictitious names, the original indictment was void; that the original indictment being void, the second amended indictment of necessity must be void.

Manifestly, it must be assumed, in order to give probative value to appellants' argument, that the so-called second amended indictment was in fact and in law what it purported in its title to be, namely, an amended indictment, and necessarily as a matter of law depended in part upon the validity of the above recited proceedings to which, as contended in substance and effect by appellants, it was inseparably connected. But, from the record, it does not appear that such an assumption is warranted, much less imperative. A period of 18 days elapsed between February 25th, the return date of the first indictment, and March 15th, the return date of the last indictment. Although the indictments appear to be the outgrowth of the same condition, it does not necessarily follow as a matter of law that they are inseparable and that the later indictments must be regarded as amendments to the first indictment. The first indictment alleged the offense to have been committed on or about February 22, 1937. The amended indictment alleged the offense to have been committed on the same date. The overt acts set forth in both indictments were alleged to have occurred on the same date. The so-called second amended indictment alleged the offense to have been committed November 1, 1936, and continuously thereafter. Thus it will be seen that there is a difference of 112 days between the date of the offense alleged in the so-called second amended indictment and in the first indictment referred to above. The mere fact that the pleader entitled the indictment "second amended indictment" is of no significance. The fact is, and the record supports the conclusion, that the indictment upon which the defendants were tried did not depend for its validity upon any of the conditions as claimed by appellants. The Supreme Court recently had occasion to observe that " . . . the

common-law forms of procedure have been either abandoned or, at least, have suffered a considerable modification in their strictness, with the consequence that their importance even in matters of pleading has been greatly decreased; and, with reference to statutory procedure, by constitutional provision, ordinarily no error 'as to any matter of pleading, or . . . procedure' constitutes a sufficient ground even for the granting of a new trial. (Sec. 4½, art. VI, Const.)'' (*Rodman* v. *Superior Court*, 13 Cal. (2d) 262 [89 Pac. (2d) 109].) Especially is this true when no prejudice can be shown as the consequence of any asserted departure from a strict compliance with statutory requirements.

■ It is also urged by appellants that the court was without jurisdiction to proceed under the second amended indictment because no ruling was made upon the demurrer to the former indictment. The contention is without merit. Assuming, but merely for the sake of argument, that the indictment here considered was an amended indictment, appellants' argument would still be unavailing. The court had occasion to pass on a somewhat similar question in *People* v. *Gilbert*, 26 Cal. App. (2d) 1 [78 Pac. (2d) 770] ; there the court observed: ''The first point made by appellants for a reversal of the judgment herein is based upon the refusal of the court to grant their said motion to set aside the amended indictment. The principal ground urged by appellants in support of said motion was that the amended indictment was not legally found by the grand jury, for the reason that it was not an indictment amended by the district attorney after leave granted, but an attempt by the grand jury to return an amended indictment after the defendants had pleaded by way of demurrer to the original indictment. Appellants' claim in this regard is without merit. It is the law that where, as in the instant case, no ruling had been made upon the demurrer, it is the unquestioned right of the grand jury to return a second indictment while the original indictment is in full force and after the defendants have entered their pleas thereto; and further, such second indictment may be found by the same grand jury which returned the original one, without their hearing any additional evidence. (*People* v. *Follette*, 74 Cal. App. 178, 185, 186, 189, 190 [240 Pac. 502], and cases therein cited.) It is only where the demurrer is sustained that the judgment becomes

a bar unless the court directs a resubmission to the grand jury. Appellants have not suggested how under any possible conception of the record they were in any way prejudiced by the return of the second indictment. (*People* v. *Clawson*, 82 Cal. App. 422 [255 Pac. 552].) The case of *People* v. *Seitz*, 100 Cal. App. 113 [279 Pac. 1070], has no application to the case at bar because in the Seitz case the demurrer had been sustained without leave to amend." The same reasoning can be said to apply in the present case.

 Finally it is contended by appellants that the court was without jurisdiction because section 418 of the Penal Code contains all of the elements of a conspiracy and the legislature has denominated such a crime a misdemeanor, and that "there cannot co-exist two crimes which are identical and yet which provide each a different type of punishment". This contention is also without merit. It is sufficient to note that section 182 of the Penal Code provides as follows: "If two or more persons conspire to commit any crime . . . they are punishable as follows: . . . and cases of such conspiracy may be prosecuted and tried in the superior court of any county in which any overt act tending to effect such conspiracy shall be done." By the punishment provided, the superior court is vested with jurisdiction. Moreover, it should be noted that the appellants herein were charged with conspiracy and not the simple violation of either section 418 or section 594 of the Penal Code.

The foregoing disposes of other related and subordinate contentions, to which it is unnecessary to give consideration.

For the reasons stated the judgment and the order denying the motion for a new trial are, and each of them is, affirmed.

York, P. J., and White, J., concurred.