[Crim. No. 1259. In Bank.—September 1, 1905.]

In Re JOHN KELSO, on Habeas Corpus.

MUNICIPAL ORDINANCE—VIOLATION—VALIDITY—REVIEW UPON HABEAS CORPUS.—Upon a writ of *habeas corpus* for discharge of a prisoner convicted of the violation of a municipal ordinance, the sufficiency of the evidence given upon the trial is not open to review.

ID.—CONSTRUCTION OF ORDINANCE AGAINST "STONE QUARRY"—CODE PROVISION NOT VIOLATED.—An ordinance prohibiting the operation of a "stone quarry" within certain limits cannot be reasonably construed as violating section 832 of the Civil Code and prohibiting an owner of land from making proper and usual excavations for purposes of construction.

ID.—INVALID ORDINANCE—ABSOLUTE PROHIBITION—HABEAS CORPUS.—A municipal ordinance absolutely prohibiting the maintenance or operation of a rock or stone quarry within a large portion of the city limits, without any limitation as to the mode of quarrying or resulting injury to others, is an arbitrary and unwarrantable interference with the right of private property, and is invalid; and a person convicted of a violation thereof will be discharged upon *habeas corpus*.

ID.—LIMITS OF POLICE POWER—MODE OF QUARRYING—BLASTING.—So far as one's property may be used without injury to others, its use cannot be absolutely prohibited under the guise of the exercise of the police power. But quarrying may be done in such a way and under such circumstances as to make it a public nuisance; and the matter of blasting in a densely populated community is one for police regulation, and the circumstances may be such that blasting may be absolutely prohibited.

ID.—PROPERTY HELD SUBJECT TO POLICE POWER.—It may be that such proper regulation of the mode of working a quarry as will be upheld as a valid exercise of the police power will entail such cost as will in many cases make it unprofitable to remove the rock or stone or impossible to extract it without violating such regulations; but if this be the effect of proper regulations, the property-owner cannot complain, for he holds his property subject to the proper exercise of the police power of the state.

WRIT of Habeas Corpus to the Sheriff of the City and County of San Francisco.

The facts are stated in the opinion of the court.

J. C. Bates, for Petitioner.

CXLVII. Cal.—39

Lewis F. Byington, and James M. Hanley, for Respondent.

ANGELLOTTI, J.—Petitioner seeks his discharge from the custody of the sheriff of the city and county of San Francisco, by whom he is held under a commitment issued upon a judgment pronounced against him upon conviction of a violation of an ordinance of said city and county.

The prohibitory portion of said ordinance is as follows, viz.: "No person, company or association shall maintain or operate any rock or stone quarry within that portion of the city and county of San Francisco bounded as follows:" Then follows a description of a large portion of such city.

The complaint filed against petitioner simply charged him in the language of the ordinance with willfully and unlawfully maintaining and operating a certain stone and rock quarry within the limits designated, and undoubtedly alleged a public offense if the ordinance is valid. In this proceeding, we cannot of course consider the evidence given upon the trial of petitioner, or determine whether or not that evidence showed that he committed the acts charged against him. The adjudication of the trial court, and the affirmance of the judgment by the superior court, are conclusive upon that question here.

The only question presented for our determination is as to the validity of the ordinance.

We do not think that the ordinance can reasonably be construed as prohibiting an owner of land containing stone or rock from making thereon such "proper and usual excavations . . . for purposes of construction," as may be necessary. What is prohibited is the maintenance or operation of a "rock or stone quarry." The term "quarry" is not properly applicable to the comparatively slight excavations on land made primarily for purposes of construction thereon, and not primarily for the purpose of disposing of the rock, or stone, or other material taken out. As defined by the lexicographers, it is similar to a mine, in the sense that the material removed, be it mere rock or stone or valuable marble, is removed because of its value for some other purposes, and in the sense that it is not removed for the purpose of improving

the property from which it is taken. It is distinguished from a mine in the fact that it is usually open at the top and front (see Century and Standard dictionaries), and, in the ordinary acceptation of the term, in the character of the material extracted, but these distinctions are not material here. Webster defines a quarry as "a place, cavern or pit where stone is taken from the rock or ledge, or dug from the earth, for building or other purposes; a stone pit," and in March's dictionary, we find it defined as "a stone mine." In its proper significance, this is what it really is. It is a place, generally open at top and front, from which rock or stone is extracted solely because of its value for use elsewhere, just as gold or other precious metals are removed from a mine, and "proper and usual excavations" made for construction purposes on the land to be improved do not fall within the term "quarry." There is therefore nothing in the contention that the ordinance is in conflict with the provisions of section 832 of the Civil Code, confirming the right of the owner of land "to make proper and usual excavations on the same for purposes of construction, on using ordinary care and skill, and taking reasonable precautions to sustain the land of the other, and giving previous reasonable notice to the other of his intention to make such excavations," and subject to which right the coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining land.

The case, however, presents a much more serious question. The effect of the ordinance absolutely prohibiting the maintenance or operation of a rock or stone quarry within certain designated limits of the city and county of San Francisco is to absolutely deprive the owners of real property within such limits of a valuable right incident to their ownership,—viz., the right to extract therefrom such rock and stone as they may find it to their advantage to dispose of. While the use to which a man may put his property may be restricted or regulated by the state, in the exercise of its police power, so far as may be necessary to protect others from injury from such use, it is of course elementary that the enjoyment of one's property cannot be interfered with or limited arbitrarily. As is said in Tiedeman's Limitations of Police Power, the next thing to depriving a man of his property is

to circumscribe him in its use. A limitation of the use *pro tanto* deprives him of the enjoyment thereof, and any arbitrary action in this regard is a taking of private property without due process of law. (Secs. 122, 122a.) While in the exercise of its police power the state may limit or regulate the use, any such limitation or regulation must find its justification in the necessity for the protection of the legal rights of others. If it does not, it is an unwarrantable invasion of property rights, against which the courts will protect. Whether or not a certain limitation or regulation is essential is largely a question for the legislative department, to be determined with reference to all the existing circumstances, and the courts will not ordinarily interfere where it can be seen that the regulation has some proper relation to an object within the domain of the police power of the state, which, as stated by Mr. Cooley, includes all regulations having reference to "the comfort, safety or welfare of society." But regulations which transcend these objects cannot be upheld by the courts as legitimate police regulations. (See *Ex parte Dickey,* 144 Cal. 234, 236, [103 Am. St. Rep. 82, 77 Pac. 924].)

Applying these well-recognized principles to the ordinance before us, we are unable to perceive any ground upon which it may be sustained as a legitimate exercise of the police power. It is in no sense a mere regulation as to the manner in which rock or stone may be removed from the land by the owner thereof, but is an absolute prohibition of any such removal. However valuable the rock or stone may be if removed, and however valueless if not removed, the owner must allow it to remain in its place of deposit. Such a prohibition might be justified, if the removal could not be effected without improperly invading the rights of others, but it cannot be doubted that rock and stone may under some circumstances be so severed from the land and removed as not in the slightest degree to inflict any injury which the law will recognize. So far as such use of one's property may be had without injury to others it is a lawful use which cannot be absolutely prohibited by the legislative department under the guise of the exercise of the police power.

It may freely be conceded that rock or stone quarrying may be done in such a way and under such circumstances as to

occasion injury to others or to make it a public nuisance (see
*Queen* v. *Mutter*, 10 Cox C. C. 6), and that the state has the
power to impose such limitations as are necessary to prevent
this.

For instance, an ordinary method of loosening rock or stone
is blasting with powder, dynamite, etc., and respondent urges
this as one of the reasons why the operation of a quarry is
dangerous to the public safety. This objection goes, however,
only to the way in which the work is done, and not to the
work itself. Rock or stone may be extracted without blasting,
—not so easily, perhaps, and therefore not so profitably, but
still blasting is not absolutely essential to the extraction of
the rock. It has been properly recognized that the matter of
blasting in a densely populated community is one for police
regulation, and the circumstances may be such that blasting
may be absolutely prohibited. It was so held by the supreme
court of Massachusetts in *Commonwealth* v. *Parks*, 155 Mass.
531, [30 N. E. 174], where an ordinance prohibiting the blast-
ing of rock and stone with gunpowder, etc., without written
consent from the board of aldermen, was upheld. Doubtless,
the city and county of San Francisco may enact all needful
regulations as to blasting, and such other regulations as to
the manner in which and extent to which quarrying work
may be done, as may be necessary to the protection of those
rights which may be guarded by the state by the exercise of
its police power. It may also be suggested that in so far as
any work of the character here attempted to be prohibited,
by reason of the place or manner in which it is being done, or
the extent to which excavations are being made, constitutes
an unauthorized invasion of the property rights of adjoining
owners, such adjoining owners have their remedy by civil
action.

We can see no valid objection to the work of removing from
one's own land valuable deposits of rock or stone that may
not be entirely met by regulations as to the manner in which
such work shall be done, and this being so, we are satisfied
that an absolute prohibition of such removal under all cir-
cumstances cannot be upheld.

It may be that such regulations of the work as will be
upheld as a proper exercise of the police power, will entail
such cost as will in many cases make it unprofitable to remove

the rock or stone, or the rock or stone may be so situated as to make it impossible to extract it at all without violating the regulations; but if this be the effect of proper regulations, the property-owner cannot complain, for he holds his property subject to the proper exercise of the police power of the state.

It is unnecessary to discuss other objections made to said ordinance.

The ordinance being invalid, the petitioner must be discharged from custody, and it is so ordered.

Henshaw, J., Lorigan, J., McFarland, J., Beatty, C. J., Van Dyke, J., and Shaw, J., concurred.