[Crim. No. 1545.   Third Appellate District.—June 4, 1937.]

## THE PEOPLE, Respondent, v. HENRY E. BOSSE, Appellant.

Joseph H. Huberty for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Appellant was charged with the crime of breaking, injuring and destroying a dam, an indictable misdemeanor, as defined by section 607 of the Penal Code. He was found guilty, and from the judgment entered thereon, prosecutes this appeal.

The grounds of appeal generally are insufficiency of the evidence to support the conviction and alleged misconduct of the district attorney.

Defendant Bosse is the owner of certain lands, riparian to the south fork of the Mokelumne River, which he has irrigated for many years, both under his riparian rights and under an appropriative right. The complaining witness, Eugene Fuchs, likewise owned lands riparian to said stream, immediately below the lands of Bosse. Some seven acres of this land are irrigated under a right by appropriation, which is subordinate, both in point of time and law to the rights of Bosse.

The water used by Fuchs is diverted from the stream by means of a dam in the river located upon the lands of Bosse, and is carried from the dam by means of a ditch which extends from the point of diversion in a general westerly direction about one-half mile to the point of use.

This diversion dam was built in 1895 and consisted of a bottom log about 22 inches in diameter laid crosswise in the bed of the stream, and on top of this log was pinned a smaller log, which smaller log was from 6 inches to 10 inches in diameter. The bottom log at all times since has remained in place. The top log remained in place until 1914 when it rotted out. It was immediately replaced by a similar log in a similar manner. This second log, during the winter of 1936, was washed out, and it was replaced by two timbers, a 4x6 and a 2x6 placed upon the bottom log. During the summer of 1936 Bosse removed these timbers.

It was his contention that prior to the placing of these two timbers on the top of the dam Fuchs had been diverting some 90 miner's inches of water, but by the addition of the planks 170 inches was then diverted. Bosse also contends that the

complaining witness had never acquired a right to water in excess of 90 inches, and that even 90 inches was more than could be beneficially applied to the lands to which the water was diverted. He also claims that to increase the height of the dam was an invasion of his water right, added an increased burden to his lands, was contrary to law, and therefore he had a lawful right to remove such encroachment, and for that reason his conviction was erroneous.

Section 607 of the Penal Code reads in part as follows:

''Every person who wilfully and maliciously cuts, breaks, injures or destroys any . . . dam, . . . reservoir or any structure erected to create hydraulic power or . . . to store or conduct water for . . . agricultural purposes . . . is guilty of a misdemeanor, . . . ''

It follows from the plain provisions of this act that we cannot herein consider whether the use of the water was excessive or whether the new construction added an increased burden to the lands of defendant. These are matters to be determined in a civil proceeding. It may have been that Bosse was only trying to protect his property against an unlawful invasion upon the part of Fuchs, but in summarily proceeding as he did he mistook his remedy. The public peace is paramount to any private right, and under the general police power of the state, such provisions as section 607 of the Penal Code may be enacted.

The constitutional right to hold and enjoy property is subject to such reasonable regulations as is necessary to serve the public health and morals and to promote the common good, and persons and property are subject to restraint to secure the general welfare of the state. It is common knowledge that water and water rights have been the source of controversies between claimants thereto and that attempts to enforce alleged rights by force have, in numerous instances, led to disturbances of the peace. That portion of appellant's brief, therefore, dealing with the wasteful use of water by the complaining witness, the rights of defendant as a riparian owner in the stream and the change in the construction of the diversion dam, are all matters that should be addressed to a court in a civil proceeding and can have no bearing here on a charge of violation of the statute under review.

Various citations of misconduct of the district attorney are made by appellant. The first assignment is that

the district attorney was guilty of misconduct in stating, in his address to the jury, that defendant had been previously convicted of a crime but no proof thereof is to be found in the record. It appears that during the trial the complaining witness was asked on cross-examination if Mr. Airola, as a private attorney as distinguished from his capacity as district attorney, ever handled any of the business affairs for him pertaining to the diversion dam, and for the purpose of impeaching him there was presented in evidence a letter from Mr. Airola to Bosse. This letter stated that Fuchs desired to do certain maintenance work on the diversion dam and asked permission to cross the lands of defendant.

Following a trial in the justice's court, on redirect examination, it was attempted to be shown that this letter was written by the district attorney in his official capacity in pursuance of an agreement made by the defendant and the complaining witness to the effect that in order to prevent a breach of the peace, the complaining witness would not enter upon the lands of the defendant to repair the dam without first notifying the district attorney. Under these circumstances it was not improper to bring before the jury the facts surrounding the writing of the letter. The fact that it was thereby made to appear that defendant had theretofore been convicted of a misdemeanor would not make the letter inadmissible. (*People* v. *Maroni*, 196 Cal. 154 [236 Pac. 135].)

The record shows there was a trial in the justice's court, but whether defendant was ever convicted did not appear. It was improper, therefore, for the district attorney to state that defendant had been convicted. An objection was made by the attorney for the defendant to this statement, and the court instructed the jury to disregard the objectionable remark. We must assume the jury heeded the admonition and no harm resulted from the remark.

In *People* v. *Booth*, 72 Cal. App. 160 [236 Pac. 987], the district attorney, in his address to the jury, referred to other crimes committed by the defendant. These remarks were stricken from the record by the trial court and it was held on appeal that under the circumstances and the convincing character of the evidence of guilt against the defendant, there was no miscarriage of justice. In *People* v. *Jones*, 78 Cal. App. 554 [248 Pac. 964], where the clerk inadvertently read to the jury from the indictment the allegations concerning a prior conviction of felony, the defendant having on arraign-

ment, admitted such prior conviction, such error was not prejudicial. Likewise here we find no prejudicial misconduct nor miscarriage of justice.

■ It is also claimed the district attorney committed misconduct in stating to the jury the defendant had flaunted the law and law enforcement by going over the head of the district attorney and demanded a jury trial, and in stating to the jury that he, the district attorney, would be guided in the future by the verdict of the jury in this case. Likewise in this citation of misconduct we find no serious error.

■ Objection is also made to a portion of the argument of the district attorney, wherein it is charged he attempted to testify to certain facts, he not being sworn as a witness. The substance of these remarks were that he had gone upon the lands and saw the methods of irrigation used by the complaining witness, but from what little experience that he had in irrigation he could not say to Mr. Fuchs that the ditch was too large or that the amount of water taken was not necessary for the irrigation of the ranch.

Another instance was that the district attorney said that he, in the presence of the justice of the peace and a deputy sheriff, had advised the defendant that he had better get a court order if he thought he was in the right in removing the obstruction in the dam. The district attorney said that at that time nothing that they could do could deter Mr. Bosse from his intention of destroying the dam, and that Mr. Bosse had been unable to give a legitimate reason or show that his land was burdened by the repair work on the dam.

We cannot see wherein the statements herein made, whether proper or improper, can be deemed prejudicial. The only material fact before the jury was whether the defendant had wilfully broken, injured or destroyed the dam.

Finding no error resulting in miscarriage of justice, the judgment should be affirmed, and it is so ordered.

Plummer, J., and Thompson, J., concurred.