Per Curiam.

Both lower courts held that the subsequently adopted township zoning ordinance, “insofar as its operation prohibits the plaintiffs * * * from removing coal from their land by the strip mining method, * # * is arbitrary and unreasonable, and deprives plaintiffs-appellees of their property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and Article I, Sections 1,16 and 19 of the Constitution of the State of Ohio. ’ ’
Under the particular facts in this case, was this error? If not, the decree of the Court of Appeals must be affirmed.
The sole complaint of the defendants-appellants is that the decisions of the lower courts were adverse on the one ground that the zoning ordinance is invalid so far as it affects the land of the plaintiffs. Some of the important facts are not in dispute, but the existence of numerous strenuously contested factual issues is demonstrated by a record in excess of 1,700 pages.
The following factual allegations appear in the plaintiffs’ second amended petition:
“5. That the above described lands of plaintiffs and the lands surrounding same are rural and open, with only a few houses or other structures being located in the general vicinity thereof; that the minerals underlying said lands have a present fair market value in excess of $1,000,000 and that the residual value of said lands after removal of the minerals therefrom will be approximately $17,000, which amount is the approximate *381 present market value of such, lands exclusive of the value of the underlying minerals; that the minerals underlying said lands when removed will find a ready market in the industrial area of Mahoning County and northeastern Ohio, and are of great and immediate value to the residents and industries located therein; that the removal of such coal can be effected only through the use of the strip mining or open pit method and such operation will constitute only a temporary use of the above described land, limited in duration to approximately four years, that thereafter in approximately six years said lands will he restored to agricultural uses and will have the residual value above set forth, which is as great as or greater than the present value of the lands; that plaintiff, The East Fairfield Coal Company, has been granted a license pursuant to Ohio General Code Sec. 898-223 et seq. (O. R. C. 1513.01 et seq.) by the Chief of the Division of Reclamation of the Department of Agriculture of the State of Ohio, a printed copy thereof being attached hereto as exhibit B and made a part of this petition as though rewritten at length herein, which license authorizes the plaintiff to mine and remove the coal underlying the above described lands by the strip mining or open pit method; that no further authority to mine and remove coal from such lands is required by the statutes of the state of Ohio; and that pursuant to the above sections of the Ohio Coal Strip Mine Land Reclamation Act The East Fairfield Coal Company is required to reclaim lands which it proposes to strip pursuant to the above described lease after the mining and removal of coal therefrom to agricultural uses, in accordance with plans to be submitted to and approved by the division of reclamation, pursuant to statute; that the temporary use of the above described lands for the purpose of mining and removing the underlying coal will not have any effect upon other land in Canfield Township or the owners or occupants thereof other than the economic benefits to be derived from the full use of the area’s resources.”
The Court of Appeals concurred unanimously in the following excellent summary and comment by Maiden, J., of the Court of Common Pleas as to this issue:
“So that we have here an ordinance which prohibits the *382 strip mining of coal anywhere in the township. Of course, the plaintiffs can not complain of anything regulating industrial districts, but this analysis is made to indicate the effect and scope of the ordinance on an overall basis.
“The enabling statute permits the township to 'regulate’ uses. The word, 'regulate,’ does not ordinarily include 'prohibit’ (although it may, as in Smith v. Juillerat, supra [161 Ohio St., 424, 119 N. E. (2d), 611]), and express authority to regulate as a general rule negatives by implication the power to prohibit. Ex Parte Kelso, 147 Cal., 609, 82 P., 241; Frecher v. City of Dayton, 88 Ohio App., 52, 85 N. E. (2d), 419, affirmed, 153 Ohio St., 14, 90 N. E. (2d), 851 (1950); State, ex rel. Euverard, v. Miller, 98 Ohio App., 283, 129 N. E. (2d), 209; Ohio Bar, Oct. 3, 1955. The state of Ohio has recognized strip mining as a legitimate business by the very enactment of the various statutes dealing with it, and no township may arbitrarily prohibit the conduct of that business. Village of Terrace Park et al. v. Errett, 12 F. (2d), 240 (1926) (6th Circuit).
“But from here on we must consider the protective effect of the constitutional guaranties upon the owner of the land in question; whether the power exists to forbid the use must not be considered abstractly, but in connection with all the circumstances and locality of the land itself and its surroundings. Village of Euclid v. Ambler Realty Co., supra [272 U. S., 365, 71 L. Ed., 303, 47 S. Ct., 114, 54 A. L. R., 1016], page 387. Hence viewed in that light, is the impact of the ordinance on plaintiffs’ land reasonable or arbitrary? Is it regulation or is it confiscation of the coal without due process of law?
“From the cases cited above it appears that the factor of the temporary use of the land for mining purposes as compared to a total destruction is to be taken into account, as well as the degree in which the values of the property are diminished by the regulation in question. It appears from plaintiffs’ exhibit No. 72, being an economic report on Mahoning County and the state of Ohio, that there are 13,375 acres of farm land in the township, of which 35 to 40 per cent is crop land. The total valuation in 1952 of farm land (roads deducted) was $712,810; exclusive of farms, the land value in the township was $1,004,550 (record 1358). In 1950 agricultural income in the state of Ohio *383 was $908,241,600, Mahoning County only contributing $8,703,800. In 1951 Mahoning County was 8th of 88 in population, 8th of 88 in tax duplicate valuation, but 58th in agricultural income. The bulk of agricultural income in Mahoning County comes from dairy products and poultry (record 1362). A computation from the zoning map in evidence (plaintiffs’ exhibit 3) shows the relations of the various districts under the zoning ordinance in acres; all of this, of course, is exclusive of the village of Canfield: agriculture, 11,921 acres, 70 per cent; industrial, 576.6 acres, 3.4 per cent; residential 1 and 2, 4,425 acres, 26 per cent; and business, 84 acres, 0.6 per cent. In Terrace Park et al. v. Errett, supra, the evidence showed that the gravel had a value of approximately $50,000 which would be entirely lost as a result of the prohibition and that the land for permitted uses had a value of less than one-tenth as much. In the ease at bar the value of the tract, exclusive of coal, was shown not to exceed $17,000, or 1.7 per cent of the value of the coal, which the evidence shows exceeds $1,000,000.
‘ ‘ The evidence shows that this land is run-down farm land, located on the edge of the township approximately two miles from built-up areas, about 300 yards away from a presently operating strip mine in the adjoining township of Ellsworth, which mine is taking coal from the same vein.
it * #
“Under all the evidence in the case and under the law as indicated it is the ruling of the court that this ordinance to the extent to which it applies to the property of the plaintiffs is unreasonable and arbitrary in that it deprives plaintiffs of their property without due process of law in violation of Article XIV of the Amendments to the Constitution of the United States and Article I, Sections 1, 16 and 19 of the Constitution of Ohio. It should be noted that in Midland Electric Coal Corporation v. Knox County, supra [1 Ill. (2d), 200, 115 N. E. (2d), 275], the Supreme Court of Illinois concluded with this language :
it i* * * -gy ftúg conclusion we do not mean to imply that all zoning regulations prohibiting the strip mining of minerals are necessarily invalid. To the extent to which the decree of the trial court may be construed to apply to property in a *384 different situation and involving different physical facts, it is inappropriate and the decree is modified to apply only to the property in question.’ ”
Without weighing the evidence and without expressing an opinion concerning the wisdom of the ordinance, this court does hold that this record discloses substantial evidence supporting the conclusion of both lower courts that the township zoning ordinance, so far as its operation prohibits the plaintiffs from removing coal from their land by the strip-mining method, is arbitrary and unreasonable and deprives the plaintiffs of their property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and Sections 1, 16 and 19, Article I of the Constitution of Ohio.
Under the evidence in this case, the decree of the Court of Appeals must be affirmed.

Decree affirmed.

Weygandt, C. J., Zimmerman, Stewabt, Bell, Taft, Matthias and Heebeet, JJ., concur.